IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–00036–CMA–KMT

WILLIAM G. CLOWDIS, JR.,

     Plaintiff,

v.

COLORADO HI-TEC MOVING & STORAGE, INC.,
KEVIN DICKENS,
KAREN A. DICKENS, and
WHEATON VAN LINES, INC.,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

     This matter is before the court on "Defendants Colorado Hi-Tec Moving & Storage, Inc.,

Kevin Dickens, and Karen A. Dickens' Motion to Compel Arbitration and Stay Proceedings or,

In the Alternative, Motion for Extension of Time to File a Response to Plaintiff's Amended

Complaint."  (Doc. No. 36, filed June 10, 2011 [Mot.].)  For the following reasons, the court

recommends that the Motion be granted.

## STATEMENT OF THE CASE

     The following factual background is derived from Plaintiff's Amended Complaint (Doc.

No. 4, filed Feb. 10, 2010 [Am. Compl.]) and the parties' submissions with respect to this

recommendation.  Plaintiff alleges that Defendants wrongfully sold his belongings, which were

placed into storage with Defendant Colorado Hi-Tec Moving & Storage (hereinafter "Colorado Hi-Tec"). Defendants Karen and Kevin Dickens are the co-owners of Colorado Hi-Tec. (Mot. ¶ 1.)

In December 2006, Plaintiff accepted an offer for a position at Fairmont General Hospital in Fairmont, West Virginia (hereinafter the "Hospital"). (Am Compl. ¶ 1.) However, Plaintiff's contract with the Hospital was contingent on his obtaining a license to practice medicine in West Virginia—before then, he was only licensed in Virginia. (*Id.* ¶¶ 2-3.) Because Plaintiff had not practiced medicine for an extended period of time, he needed to be retrained before he could be licensed to practice medicine in West Virginia. (*Id.* ¶ 4.)

To accommodate Plaintiff's retraining, the Hospital agreed to move Plaintiff's personal belongings to West Virginia. (*Id.* ¶ 5.) Plaintiff obtained several estimates for moving his belongings and, allegedly, the Hospital ultimately elected to contract with Colorado Hi-Tec. (*Id.* ¶¶ 8-10.)

Plaintiff, however, ended up moving into a furnished apartment in West Virginia for the duration of his retraining. (*Id.* ¶ 12.) Consequently, Plaintiff had no place for his personal belongings at that time. (*Id.*) Therefore, the Hospital allegedly further contracted with Colorado Hi-Tec to instead store Plaintiff's belongings until Plaintiff was ready for them to be moved. (*Id.* ¶13.)

Plaintiff turned over his personal belongings to Colorado Hi-Tec on January 13, 2007. (*Id.* ¶ 16.) At that time, Plaintiff signed a Non-Negotiable Warehouse Receipt and Inventory (hereinafter the "Warehouse Receipt") provided to him by Colorado Hi-Tec, which, as will be

2

discussed below, is at the center of the present Motion.  (Mot. Ex. A.)  Thereafter, Colorado Hi-

Tec placed Plaintiff's belongings into storage, per its alleged agreement with the Hospital.  (*Id.* ¶

16-17.)

       Ultimately, Plaintiff was unable to obtain a license to practice in West Virginia and,

consequently, the Hospital decided against hiring Plaintiff—although it is not entirely clear when

that decision was made.  (*Id.* ¶ 19.)  As such, rather than continue to pursue a career in medicine,

Plaintiff decided to enroll in law school at Southern Illinois University in Carbondale, Illinois in

the Fall of 2008.  (*Id.* ¶ 21.)  In August 2008, shortly before starting law school, Plaintiff came to

Colorado to retrieve his belongings from storage.  (*Id.* ¶ 22.)  Although Plaintiff maintains that

he notified Colorado Hi-Tec that he was coming from Illinois to retrieve his belongings,

Defendant Karen Dickens informed Plaintiff on his arrival in Colorado that Colorado Hi-Tec

"was too busy at the time to break out his belongings from storage."  (*Id.* ¶ 25.)  Instead, he was

asked to come back in a few weeks, which was impractical for Plaintiff as he was set to begin

law school the following week.  (*Id.* ¶¶ 26-27.)

       After his proposal to have his belongings shipped to Illinois was rejected, Plaintiff asked

Defendant Karen Dickens to provide him with a written price quote for keeping his belongings

in storage until he could make other arrangements.  (*Id.* ¶ 27-29.)  However, Plaintiff alleges that

he never received any estimate for storing or moving his belongings.  (*Id.* ¶ 30.)  Nor was he

informed of the fact that Defendants Karen Dickens and Colorado Hi-Tec believed that Plaintiff

owed Colorado Hi-Tec money for the storage of his belonging, or of the amount he supposedly

owed.  (*Id.* ¶ 31.)

Rather, the first time Plaintiff learned of his supposed debt to Colorado Hi-Tec was when he received a legal sale notice from Colorado Hi-Tec on November 24, 2008 claiming that Plaintiff owed $6,574.26 in rent for the storage of his belongings from mid-January 2007 to the end of November 2008.  (*Id.* ¶ 32.)  The notice further indicated that Colorado Hi-Tec had placed a lien on Plaintiff's belonging in the amount of the past due rent, and that a public sale would be held on January 10, 2009 to "settle the debt."  (*Id.* ¶ 32, 34.)

A sale was indeed held on January 10, 2009, where Colorado Hi-Tec sold a number of Plaintiff's belongings to recoup the balance of unpaid rent.  (*Id.* ¶ 35-36.)  Plaintiff maintains that it was the Hospital, rather than Plaintiff, that contracted for the storage of Plaintiff's goods, and therefore, he could not be held liable for the rent deficiency.  (*see, e.g., id.* ¶ 33a.)  Plaintiff also maintains that, in any event, the lien placed on his belongings was legally and factually defective, that the public sale of his belongings was illegitimately conducted, that the administrative costs relating to the public sale were unreasonable, that the rent charged for the storage of his belongings was unreasonable, that the sale proceeds received for his belongings was far under market value, and that Colorado Hi-Tec failed to return Plaintiff's belongings that were not sold at the January 10, 2009 public sale.  (*See id.* ¶ 32-43.)

## PROCEDURAL HISTORY

Based on the above facts, Plaintiff brought this suit on January 6, 2011 against Defendants Colorado Hi-Tec, Karen Dickens, Kevin Dickens, and Wheaton Van Lines, Inc.[1]

---

[1] Plaintiff alleges that Colorado Hi-Tec is an agent of Wheaton World Wide Moving. (Am. Compl. ¶ 9.)

("Wheaton").  Plaintiff's Amended Complaint alleges that Defendants are liable for conversion; statutory civil theft, pursuant to Colo. Rev. Stat § 18-4-405; fraud; and an accounting of the belongings sold by Colorado Hi-Tec, as well as those remaining in Defendants' possession. Wheaton answered Plaintiff's Amended Complaint on May 31, 2011. (Doc. No. 31.)

Defendants Colorado Hi-Tec, Kevin Dickens, and Karen Dickens (hereinafter, collectively the "Hi-Tec Defendants") filed the present Motion seeking to compel arbitration and stay these proceedings on June 10, 2011.  Wheaton filed a Joinder in the Hi-Tec Defendants' Motions on June 15, 2011.[2]  (Doc. No. 37 [Joinder].)  Plaintiff filed a response in opposition to the Hi-Tec Defendants' Motion on July 1, 2011 (Doc. No. 43 [Resp.]) and the Hi-Tec Defendants filed a reply on July 18, 2011 (Doc. No. 55 [Reply].)

At the Scheduling Conference held on July 14, 2011, the court granted Plaintiff leave to file a supplemental response based on Plaintiff's counsel's representation that Plaintiff had discovered new evidence relating to the issues raised by the Hi-Tec Defendants' Motion.  (*See* Doc. No. 51, filed July 14, 2011.)  Accordingly, Plaintiff filed a supplemental response on August 4, 2011.[3]  (Doc. No. 61 [Supp. Resp.].)  The Hi-Tec Defendants filed a supplemental

---

[2] Wheaton also joined in the Hi-Tec Defendants' Reply and Supplemental Reply.  (Doc. No. 56, filed July 18, 2011; Doc. No. 63, filed Aug. 11, 2011.)

[3] Plaintiff's Supplemental Response was originally filed on July 29, 2011 (Doc. No. 57); however, Plaintiff encountered difficulties in attempting to file a number of exhibits attached to his Supplemental Response.  Accordingly, the court granted Plaintiff's request to re-file his Supplemental Response (Doc. No. 60, filed Aug. 3, 2011) and Plaintiff's Supplemental Response was properly filed with the appropriate exhibits attached on August 4, 2011.  (*See* Supp. Resp.)

reply on August 11, 2011.  (Doc. No. 62 [Supp. Reply].)  Accordingly, this matter is now ripe for the court's review and recommendation.

## LEGAL STANDARD

As a threshold matter, the court must determine whether the state or federal law governs whether arbitration should be compelled in this case.  In their Motion, the Hi-Tec Defendants primarily cite to state law—namely, the Uniform Arbitration Act, Colo. Rev. Stat. §§ 13-22-201, *et. seq.*—in support of their argument that the court should compel arbitration.

The Federal Arbitration Act (FAA) governs any arbitration agreement "evidencing a transaction involving commerce."  9 U.S.C. § 2; *Cummings v. FedEx Ground Package Sys., Inc.,* 404 F.3d 1258, 1261 (10th Cir. 2005).  Commerce is defined as:

> commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation.

9 U.S.C. § 1.

The agreement containing the arbitration clause at issue in this case involves commerce. Plaintiff, a resident of Illinois, engaged with Colorado Hi-Tec, a Colorado corporation, initially for the shipment of his personal belongings to West Virginia, and, subsequently, for the storage of those same belongings in Colorado.  Because the FAA's coverage is very broad in scope, the court finds that the present matter is governed by the FAA.  *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 115 (2001) (noting that, in light of the FAA's pro-arbitration purposes, the

"involving commerce" phrase of § 2 of the FAA "signals an intent to exercise Congress'

commerce power to the full.")

The FAA requires a court to stay actions involving matters referable to arbitration:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.  The FAA further requires courts to compel arbitration in those cases.  *Id.* § 4.

The FAA "manifests a 'liberal federal policy favoring arbitration.'"  *Comanche Indian*

*Tribe v. 49, L.L.C.,* 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson*

*Lane Corp.,* 500 U.S. 20, 25 (1991)).  Thus, "as a matter of federal law, any doubts concerning

the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

However, when the parties dispute the existence of a valid arbitration agreement, there is

no presumption in favor of arbitration.  *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th

Cir. 2002).  "'[T]he question of arbitrability—whether a [contract] creates a duty for the parties

to arbitrate the particular grievance—is undeniably an issue for judicial determination.  Unless

the parties clearly and unmistakably provide otherwise, the question of whether the parties

agreed to arbitrate is to be decided by the court, not the arbitrator.'"  *Riley Mfg. Co., Inc. v.*

*Anchor Glass Container Corp.,* 157 F.3d 775, 779 (10th Cir. 1998) (quoting *A T & T Techs. v.*

*Comms. Workers,* 475 U.S. 643, 649 (1995)).  Thus, "[t]he of an agreement to arbitrate is a

7

threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997).

This district approaches disputes over whether the parties have agreed to arbitrate by applying "a standard similar to that governing motions for summary judgment."[4] *Stein v. Burt-Kuni One, LLC,* 396 F. Supp. 2d. 1211, 1213 (D. Colo. 2005); *see also Goodwin v. H.M. Brown & Assocs., Inc.*, 10-cv-01205-PAB-MEH, 2011 WL 820025, at *3 (D. Colo. Mar. 2, 2011) (collecting cases); *In re Universal Serv. Fund Tel. Billing Practices Litigation,* 300 F. Supp. 2d 1107, 1116 (D. Kan. 2003) ("The Courts of Appeals have uniformly held that '[ i]n the context of motions to compel arbitration brought under the Federal Arbitration Act . . . courts apply a standard similar to that applicable to a motion for summary judgment.'") Under this approach, Defendants bear the initial burden of presenting evidence sufficient to demonstrate that an enforceable arbitration agreement exist. *Stein,* 396 F. Supp. 2d at 1212. If they satisfy that burden, the burden shifts to Plaintiff, who must show that there is "a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Id.* at 1213. Finally, the court must "look to state law principles to [determine] whether an agreement to arbitrate has been reached." *Avedon Eng'g, Inc.* 126 F. 3d at 1287 (citations omitted).

---

[4] Consequently, Plaintiff's assertion that the court should apply the Fed. R. Civ. P. 12(b)(6) dismissal standard to this issue is incorrect. (*See* Resp. at 1, 6.)

## ANALYSIS

*A.*       *The "Terms and Conditions" Section is Part of the Original Warehouse Receipt*

At the outset, the court finds that the Hi-Tec Defendants have presented evidence

sufficient to demonstrate that an enforceable arbitration agreement exists.  Specifically, in

support of its position that arbitration should be compelled, the Hi-Tec Defendants point to the

Warehouse Receipt, signed by Plaintiff, featuring an inventory of the items to be stored by the

Hi-Tec Defendants.  The Warehouse Receipt provides as follows:

> Received for the Account of William Clowdis whose latest known address is 561
> S. Pearl Street, Denver, CO 80289 the following goods and chattels enumerated
> and described in schedule below, in condition described herein, to be stored at
> warehouse at Colorado Hi-Tec 391 upon the Terms and Conditions on the back of
> this Receipt.

(Mot. Ex. A at 1.)

The second page of that document—which the Hi-Tec Defendants maintain constitutes

the reverse side of the Warehouse Receipt—contains a section titled "Terms and Conditions"

that provides, in Paragraph Nine, as follows:

> 9. ARBITRATION: Any controversy or claim arising out of or relating to this
> contract, the breach thereof, or the goods affected thereby, whether such claims be
> found in tort or contract shall be settled by arbitration law of the Company's State
> and under the rules of the American Arbitration Association, provided however,
> that upon any such arbitration the arbitrator or arbitrators may not vary or modify
> any of the foregoing provisions.

(*Id.* at 2.)

Plaintiff admits that he signed the first page of the Warehouse Receipt on January 13,

2007, when his belongings were being loaded into Colorado Hi-Tec's truck.  (Resp. ¶ 1; *see also*

Mot. Ex. A.)  Accordingly, the court finds that the Hi-Tec Defendants have provided sufficient evidence that an enforceable arbitration agreement exist.

Nevertheless, despite his signature on the front of the Warehouse Receipt, Plaintiff argues both (1) that the arbitration clause featured on page two of Exhibit A to the Hi-Tec Defendants' Motion is not enforceable, and (2) that the Warehouse Receipt in its entirety is not an enforceable contract. (*See* Resp; Supp. Resp.)

First, Plaintiff maintains that the arbitration clause was not part of the Warehouse Receipt.  In support of his position, Plaintiff points to the copy of the Warehouse Receipt that he received when Colorado Hi-Tec packed and loaded his belongings onto the truck.  (Supp. Resp. Ex. 2–6, 9.)  That copy of the Warehouse Receipt, which Plaintiff photographed from various angles, does not contain the "Terms and Conditions" page—i.e. the second page of Exhibit A to the Hi-Tec Defendants' Motion.  (*Id.*)  Additionally, Plaintiff points out that although every page of the Warehouse Receipt is signed by Plaintiff—as are two other "supplemental documents that the Movers prepared and gave him to sign when they packed up and loaded his belongings—Plaintiff was not asked to sign the "Terms and Conditions" page containing the operative terms of the alleged contract between Plaintiff and the Hi-Tec Defendants.  (Supp. Resp. ¶ 20; *compare* Supp. Resp. Ex. 1-8 *with* Mot. Ex. A at 2.)

In response to Plaintiff's argument, the Hi-Tec Defendants attach photographs of the original Warehouse Receipt they retained, which is signed by Plaintiff.  (Supp. Reply Ex C.) That photograph shows the original Warehouse Receipt from various angles and clearly depicts the "Terms and Conditions" page printed on the reverse side of page one of the original

10

Warehouse Receipt.  (*Id.* at 2–4.)[5]  Thus, the Hi-Tec Defendants maintain that Plaintiff's position that the arbitration clause was never part of the Warehouse Receipt—and that the Hi-Tec Defendants apparently altered the Warehouse Receipt in order to include the arbitration clause after the fact—is without merit.  (Supp. Reply ¶¶ 2-5.)

Having reviewed the parties' respective photographed copies of the Warehouse Receipt from all sides and with all attachments, the court finds that there is no genuine issue of material fact as to whether the arbitration clause was a part of the original Warehouse Receipt.  *Mallard v. Tomlinson,* 206 F. App'x 732, 733 (10th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)) (under Fed. R. Civ. P. 56, a factual dispute is only "genuine" if "the evidence and inferences drawn therefrom, when viewed in the light most favorable to the nonmoving party, are such 'that a reasonable jury could return a verdict for the nonmoving party.'")  Here, it is clear—and would be clear to any reasonable juror—that Plaintiff's copy of the Warehouse Receipt is a "carbon copy" of the document retained by the Hi-Tec Defendants. (*Compare* Supp. Resp. Ex. 9 *with* Supp. Reply Ex. B–C.)  Although Plaintiff is correct that the copy of the Warehouse Receipt he retained does not contain the "Terms and Conditions" page on the back, it is identical to the Hi-Tec Defendants' copy in all other respects.  (*Id.*)  The mere fact that Plaintiff may have received a copy of the Warehouse Receipt that did not contain all material terms does not negate the fact that Plaintiff signed the original Warehouse Receipt that *did* contain those terms.  Further, the fact that Plaintiff did not sign the "Terms and Conditions"

_____

[5] In several of the photographs, the viewer can see through the document paper and detect images from the reverse side, such as a red stamp.  (*Id.* at 4.)

page of the original document containing the arbitration clause is irrelevant in light of the fact

that he signed the original Warehouse Receipt's first page, which clearly referred to the "Terms

and Conditions on the back of this receipt."  *Master Palletizer Sys., Inc. v. T. S. Ragsdale Co.,*

725 F. Supp. 1525, 1531 (D. Colo. 1989) (citations omitted) ("A party need not sign every page

of a contract for the whole of the document to be effective.").  Therefore, under the Fed. R. Civ.

P. 56, which applies by analogy here, *Stein,* 396 F. Supp. 2d at 1212–13, the court finds that it is

indisputable that the Warehouse Receipt does include the "Terms and Conditions" page and,

therefore, the arbitration clause.

**B.      *Contract Formation Considerations***

Plaintiff also raises a number of arguments that, based on principles of contract

formation, the Warehouse Receipt is not a binding contract.  First, Plaintiff argues that the

Warehouse Receipt is not a contract because Plaintiff never intended that it be a contract.  (Resp.

¶ 1.)  Rather, Plaintiff maintains that he thought he was "merely signing an inventory list,

confirming that the Movers loaded each of the items on that list into their truck," which should

not be confused with an intent to form a contract.  (*Id.*)  In support of this argument, Plaintiff

maintains that his new employer at the time, the Hospital, had already "contracted with HI-TEC

to store and/or ship his belongings," which suggests that he was not signing a binding contract

for the very same purpose.  (*Id.* ¶ 21.)

The court is not persuaded.  Under Colorado law, "[t]he intent of the parties to a contract

must be determined from the contract itself.  If the terms of a contract are complete, clear, and

unambiguous, no extraneous evidence may be considered in ascertaining the intent of the

contracting parties." *Montemayor v. Jacor Commc'ns,* 64 P.3d 916, 920 (Colo. App. 2002)

(citing *Christie v. San Miguel Cntyl. Sch. Dist.,* 759 P.2d 779, 782 (Colo. App. 1988)).  Thus,

written contracts that are unambiguous "will be found to express the intention of the parties and

will be enforced according to their plain language." *Id.* (citing *Ad Two, Inc. v. City and Cnty. of

Denver,* 9 P.3d 373 (Colo. 2000)).  Finally, it is well settled that, absent fraud, "one who signs a

contract without reading it is barred from claiming [he] is not bound by what [he] has signed."

*B & B Livery, Inc. v. Riehl,* 960 P.2d 134, 138 n.5 (Colo. 1998) (citing *Rasmussen v. Freehling,*

412 P.2d 217 (1966)); *see also Cordillera Corp. v. Heard,* 41 592 P.2d 12 (1978) *aff'd,* 612 P.2d

92 (1980) (party signing an agreement is presumed to know its contents).

  The Warehouse Receipt signed by Plaintiff is unambiguous.  In particular it clearly states

that "the following goods and chattels enumerated and described in the schedule below, in

condition described herein, to be stored at warehouse at Colorado Hi Tec 391 upon the Terms

and Conditions on the back of this receipt."  (Mot. Ex. A.)  As discussed *infra.,* the back of the

receipt contains those very "Terms and Conditions," including the arbitration clause.  (*Id.*)

Accordingly, Plaintiff's position that he did not subjectively intend to enter into a contract is

irrelevant in light of the Warehouse Receipt's clear and unambiguous language.

  Nor is evidence of the alleged contract between the Hospital and Colorado Hi-Tec

persuasive in these circumstances.  *Montemayor,* 64 P.3d at 920.  There is no reason why

Colorado Hi-Tec could not have entered into a contract with the Hospital, who, according to

Plaintiff, was the payor for services, *as well as* Plaintiff, whose belongings were the subject of

the services.  In fact, Paragraph One of the "Terms and Conditions" included on the reverse of

the Warehouse Receipt provides as follows:

> 1. Ownership of Property:  The customer has represented and warranted to the company that he is the legal owner or in lawful possession of the property and has the legal right and authority to contract for serves for all of the property tendered, upon provisions, limitations, terms, and conditions . . . .

(Mot. Ex. A at 2.)  Thus, to the extent that the Hospital may have had a separate contract with

Colorado Hi-Tec pertaining to Plaintiff's belongings, that contract would be necessarily

dissimilar from the Warehouse Receipt as the Hospital could not comply with Paragraph One.

Finally, the reality that Plaintiff may not have thoroughly read the Warehouse Receipt is

likewise irrelevant.  Under *Reihl* and related cases, Plaintiff's signature on the Warehouse

Receipt bars him from claiming he is not bound by the Warehouse Receipt's arbitration clause.

*Riehl,* 960 P.2d 134, 138 n.5.

In a related argument, Plaintiff asserts that no contract was formed between him and

Colorado Hi-Tec because there was no consideration for such a contract.  Specifically, Plaintiff

maintains that Colorado Hi-Tec already had a contractual commitment with the Hospital to store

Plaintiff's belongings.  (Resp. ¶ 18.)  Plaintiff also notes that the Warehouse Receipt does not

speak to the amount Plaintiff was required to pay for the storage of his belongings.  (*Id.* ¶ 19.)

Consideration is required to form a contract.  *MarQuardt v. Perry,* 200 P.3d 1126, 1129

(Colo. App. 2008).  "Consideration may be defined as 'a benefit received or something given up

as agreed upon between the parties.'"  *Compass Bank v. Kone,* 134 P.3d 500, 502 (Colo. App.

2006) (quoting CJI–Civ. 4th 30:5 (1998)).  "It is presumed that there is consideration for a

written contract." *Houston Fearless Corp. v. Pehlman,* 480 P.2d 113, 115 (Colo. App. 1970); *see also Wingerter v. Gerber,* 09–cv–02000–PAB–MEH, 2011 WL 1135204, at *3 (Mar. 29, 2011).  This presumption "may, of course, be overcome by evidence to the contrary" in which case, the issue of failure of consideration must be resolved by the trier of fact.  *Houston Fearless,* 480 P.2d at 116.

Here, the Warehouse Receipt is a written contract; therefore, it is presumptively supported by consideration.  Moreover, even absent that presumption, there is ample consideration for a binding contract between Colorado Hi-Tec and Plaintiff.  "A benefit to the promisor or a detriment to the promisee, however slight, can constitute consideration." *Farmer v. Farmer,* 720 P.2d 174, 177 (Colo. App. 1986) (citation omitted).  Even though the Warehouse Receipt does not provide a monetary amount that Plaintiff was required to pay for the storage of his belongings, Plaintiff received the benefit of the storage of his belongings—subject, of course, to the Terms and Conditions of the Warehouse Receipt—and Colorado Hi-Tec suffered the detriment of storing Plaintiff's belonging.  (*See* Mot. Ex. A.)

Plaintiff may rebut the presumption that there is sufficient consideration for the Warehouse Agreement to be a binding contract by providing competent evidence that consideration is lacking.  And Plaintiff may be correct that if Colorado Hi-Tec already contracted with the Hospital for the storage of Plaintiff's belongings, then the storage of his belongings alone cannot constitute consideration for the Warehouse Agreement. *Kennedy v. William R. Hudon, Inc.,* 659 F. Supp. 900, 905 (D. Colo. 1987) (citing Restatement (Second) of Contracts § 71 (1981)) ("A preexisting duty is not consideration").  However, although he has

15

alleged that there was a pre-existing contract between the Hospital and Colorado Hi-Tec to store

his belongings, Plaintiff has not introduced competent evidence to that effect. *World of Sleep,*

*Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985) (only admissible evidence

may be considered when ruling on a motion for summary judgment). It is insufficient for

Plaintiff to state in an affidavit that he simply *believes* such a contract exists. *See Rice v. United*

*States,* 166 F.3d 1088, 1092 (10th Cir. 1999).[6] Accordingly, the court finds that Plaintiff has

failed to rebut the presumption that, as a written contract, the Warehouse Receipt was supported

by consideration.[7]

**C.    *Consequences of the Sale of Plaintiff's Property on the Arbitration Clause of the Warehouse Receipt***

Plaintiff also argues that even if the arbitration clause might otherwise be enforceable, the

contract was nevertheless illusory because the Hi-Tec Defendants did not submit its complaint

against Plaintiff for unpaid rent to binding arbitration before selling Plaintiff's belongings at

---

[6] Morever, even if Plaintiff had personal knowledge of the existence of such a contract, it is likely that the contract itself must be produced. Fed. R. Evid. 1002 (to prove the contents of a writing, the original writing is ordinarily required); *see also R.R. Mgmt. Co. v. CFS La. Midstream Co.,* 428 F.3d 214, 218 (5th Cir. 2005) (quoting 4 WIGMORE ON EVIDENCE § 1242 (Chadbourne rev. 1972)) (because "'[t]estimony about a document cannot go very far without referring to its terms,'" the original writing must be submitted to prove even the existence of an agreement).

[7] Although Plaintiff maintains that the Hi-Tec Defendants have a record of the original contract between Colorado Hi-Tec and the Hospital, it is Plaintiff's burden to establish a genuine issue of material fact as to whether a valid arbitration agreement exists. *Stein,* 396 F. Supp. 2d at 1213. This is especially true because the Hi-Tec Defendants clearly dispute that a contract between Colorado Hi-Tec and the Hospital ever existed. (Reply ¶ 6.) To the extent that Plaintiff maintains that discovery is ongoing, the court notes that Plaintiff chose to respond to the Hi-Tec Defendants' Motion, rather than seeking relief analogous to that provided for by Fed. R. Civ. P. 56(d).

auction.  In other words, Plaintiff argues that if he "had to submit to binding arbitration, but HI-TEC need not . . . that makes this alleged contract illusory."  (Resp. ¶¶ 17-18.)  The Hi-Tec Defendants counter that they were simply complying with the terms of the contract by holding the public auction upon Plaintiff's failure to pay for the storage of his belongings.  (Reply ¶ 11.)  Thus, they maintain that they were not required to arbitrate that issue and therefore, were not waiving their right to compel Plaintiff to submit his present claims to arbitration.  (*Id.*)

The court agrees with the Hi-Tec Defendants that Plaintiff more accurately argues that the Hi-Tec Defendants waived their right to compel arbitration.  More specifically, in this circuit, an arbitration agreement is illusory where it allows "one party the unfettered right to alter the arbitration agreement's existence or its scope."  *Dumais v. Am. Gold Corp.,* 299 F.3d 1216, 1219 (10th Cir. 2002).  Here, Plaintiff does not maintain that the Warehouse Receipt allowed the Hi-Tec Defendants to unilaterally alter the arbitration clause; rather he simply maintains that the Hi-Tec Defendants failed to invoke that provision before deciding to sell Plaintiff's belongings via auction.

Plaintiff bears the burden of demonstrating that the Hi-Tec Defendants waived their right to compel arbitration.  *Price v. Random House, Inc.,* 07-cv-01347-RPM-MJW, 2009 WL 3415821, at *6 (D. Colo. Oct 16, 2009).  This burden of demonstrating waiver is heavy given the strong federal policy favoring arbitration.  *Hill v. Ricoh Americas Corp.,* 603 F.3d 766, 771 (10th Cir. 2010); *Hart v. Orion Ins. Co,* 453 F.2d 1358, 1360 (10th Cir. 1971) ("In view of the overriding federal policy favoring arbitration, waiver is not lightly inferred").

"There is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case . . . ." *Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo.,* 603 F.3d 698, 702 (10th Cir. 1980).  However, upon review of the cases from the Tenth Circuit and this district, the court notes that the overwhelming majority of those cases revolve around whether a party's *litigation*-related conduct amounted to a waiver of the right to compel arbitration.  *See, e.g., Hill;* F.3d at 771, 775-776; *Reid Burton,* 614 F.2d 703.[8]  Otherwise, the court was unable to locate any Tenth Circuit or District of Colorado case holding that a party's failure to submit a prior dispute between the parties to arbitration waives that party's ability to compel arbitration of a subsequent dispute.  While the court is not prepared to foreclose the possibility that waiver might exist under such circumstances, Plaintiff has failed to support his waiver argument with even a single cite to

---

[8] Moreover, the test fashioned by the Tenth Circuit for addressing waiver of the right to compel arbitration overwhelmingly revolves around litigation-related, rather than pre-litigation, conduct.  That test asks:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1489 (10th Cir. 1994) (citations and internal quotation marks omitted).  Of the six factors outlined by the Tenth Circuit, four explicitly address litigation-related conduct.  *See id.*

18

relevant case law or other authority.[9]  Accordingly, the court finds that Plaintiff has failed to carry his "heavy burden" of demonstrating that the Hi-Tec Defendants' waived their right to compel arbitration under the Warehouse Receipt.  *Hill,* 603 F.3d at 771.

## D.       *Whether Arbitration Should Be Compelled*

Having disposed of Plaintiff's arguments that there is not an enforceable arbitration agreement in this case, the court finds that it is proper to compel arbitration in this case.  Indeed, Plaintiff does not argue that his present claims are outside of the scope of the Warehouse Receipt's arbitration clause.  Given the breadth of the arbitration clause—which encompasses "[a]ny controversy or claim arising out of or relating to this contract, the breach thereof, or the goods affected thereby, whether such claims be found in tort or contract" (Mot Ex. A at 2)—as well as the FAA's liberal policy favoring arbitration, *Comanche Indian Tribe,* 391 F.3d at 1131, the court finds that it is proper to stay this case and to compel arbitration of Plaintiff's claims.

---

[9] In a similar vein, Plaintiff has failed to carry his burden of demonstrating either duress or unconscionability.  More specifically, at times Plaintiff appears to argue that the he signed the Warehouse Receipt under duress (*see* Resp. ¶ 23); at other times he appears to be arguing that the arbitration clause was unconscionable (*see id.* ¶ 24).  However, even assuming he intended to raise these arguments, which is far from clear, Plaintiff bears the burden of proof on both of these issues.  *Rogers v. Royal Caribbean Cruise Line,* 547 F.3d 1148, 1158 (9th Cir. 2008) (the challenging party bears the burden of establishing that an arbitration clause is unconscionable); *see Adjustment Bureau, Inc. v. Rogers,* 354 P.2d 605 (Colo. 1960) (the burden of proving duress is on the party asserting it as a contractual defense).  Plaintiff does not cite any case law or other authority to support his ostensible positions that he executed the Warehouse Agreement under duress or that the arbitration clause was unconscionable.  In fact, he doesn't even specifically mention either "duress" or "unconscionability."  Accordingly, assuming Plaintiff even intended to raise these arguments, they are properly rejected.

Finally, the court addresses Wheaton's Joinder in the Hi-Tec Defendants' Motion.  In its Joinder, Wheaton argues that Plaintiff's claims against Wheaton "fall within the scope of the arbitration provision under the theory of equitable estoppel," which prevents Plaintiff from avoiding arbitration with Wheaton despite the fact that Wheaton was not a signatory to the Warehouse Agreement.  (Joinder at 2–4.)  In other words, Wheaton argues that Plaintiff's claims against Wheaton are subject to the arbitration provision contained in the Warehouse Receipt. (*Id.* at 7.)

First, the court notes that Plaintiff does not dispute that arbitration should be compelled as to his claims against Wheaton in the event that arbitration of Plaintiff's claims against the Hi-Tec Defendants has been compelled.  Regardless, pursuant to the doctrine of equitable estoppel, the court finds that it is appropriate to compel arbitration of Plaintiff's claims against Wheaton because Plaintiff alleges that Colorado Hi-Tec is an Agent of Wheaton.  *Cherry Creek Card & Party Shop, Inc. v. Hallmark Mktg. Corp.,* 176 F. Supp. 2d 1091, 1098 (D. Colo. 2001) (Applying equitable estoppel to include a nonparty in the scope of an arbitration agreement is appropriate when a signatory to an arbitration clause "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."); *Roe v. Gray,* 165 F. Supp. 2d 1164, 1174-75 (D. Colo. 2001) (allowing non-signatories to an arbitration agreement to nevertheless compel arbitration under equitable estoppel because the plaintiff alleged that the non-signatories were agents of signatory defendants).  Accordingly, in addition to Plaintiff's claims against the Hi-Tec Defendants, the

court finds that it is also appropriate to compel arbitration with respect to Plaintiff's claims against Wheaton.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendants Colorado Hi-Tec Moving & Storage, Inc., Kevin Dickens, and Karen A. Dickens' Motion to Compel Arbitration and Stay Proceedings" (Doc. No. 36) be GRANTED, and that the case be stay pending completion of arbitration of (1) Plaintiff's claims against Defendants Kevin Dickens, Karen Dickens, and Colorado Hi-Tec Moving and Storage, Inc., and, (2) pursuant to Defendant Wheaton Van Lines, Inc.'s Joinder in the Motion to Compel Arbitration (Doc. No. 37), Plaintiff's claims against Defendant Wheaton Van Lines, Inc.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 3rd day of November, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge